## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ANDREA BILLUPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 19 C 7873 |
| | ) | |
| | ) | |
| PHH MORTGAGE CORPORATION, as | ) | |
| successor by merger to OCWEN LOAN | ) | |
| SERVICING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

**CHARLES P. KOCORAS, District Judge**:

In this case, Plaintiff Andrea Billups, acting *pro se*, alleges that PHH Mortgage Corporation, as successor by merger to Ocwen Loan Servicing, LLC, ("Ocwen"), obtained her credit report in violation of the Fair Credit Reporting Act ("FCRA"), sent misleading communications in violation of the Fair Debt Collection Practices Act ("FDCPA"), and committed the common law tort of intrusion upon seclusion after Billups' mortgage loan was discharged through bankruptcy in 2011. According to Billups, Ocwen had no reason to pull her credit when the Chapter 7 bankruptcy extinguished her personal liability on the mortgage loan. In response, Ocwen asks the Court to dismiss Billups' FCRA claim largely because Ocwen "***had a permissible purpose*** to access Billups's credit report." ECF No. 67 at 4 (emphasis added). But

whether Ocwen actually "had a permissible purpose" is a fact question, not a pleading technicality meant to inadvertently trip up *pro se* plaintiffs. While Ocwen's arguments may prove meritorious at summary judgment, the Court will not prematurely enter a judgment when we must construe allegations in the light most favorable to Billups. At the same time, Ocwen is correct that Billups has failed to plead an FDCPA or intrusion upon seclusion claim. So we grant-in-part and deny-in-part Ocwen's Motion.

## **BACKGROUND**

This FCRA, FDCPA, and intrusion upon seclusion case chiefly concerns Ocwen's conduct during a lengthy foreclosure action against Billups in the Circuit Court of Cook County throughout 2017 and 2018, which the Illinois Appellate Court affirmed. *See Deutsche Bank Nat'l Tr. Co. as Tr. for Popular ABS, Inc. Series 2007-A v. Billups*, 2020 IL App (1st) 191934-U, ¶ 13, *appeal denied sub nom. Deutsche Bank Nat'l Tr. Co. v. Billups*, 163 N.E.3d 717 (Ill. 2021).

In her operative Second Amended Complaint, Billups alleges that Ocwen, a debt collector under 15 U.S.C. § 1692a(6), "illegally obtain[ed] her credit report on a debt that was discharged through bankruptcy in September, 2011, and for a period beginning in 2013, up and through December 1, 2017." Compl., ¶¶ 7, 10, 35.[1] As a result, Billups learned on December 1, 2017 that Ocwen invaded her privacy by obtaining her credit report in one of four of her cases currently pending in the Northern District. *See id.* at ¶

---

[1] *See Deutsche Bank Nat'l Tr. Co., as Tr. for Popular ABS, Inc., Series 2007-A, v. Andrea Billups*, et al., No. 12-CH-20593 (Cir. Ct. Cook County, Ill.); *In re: Andrea Billups*, Case No. 11-17663 (N.D. Ill. Bankr.).

36 (referencing *Billups v. Deutsche Bank National Tr. as Tr. for the Benefit of the Certificate Holders of Popular ABS, Inc. Mortgage Pass-through Certificates Series 2007-A, et al.*, No. 1:15-cv-03165 (N.D. Ill.) (Ellis, J.) (voluntarily dismissed without prejudice)).[2] Billups further alleges that the report was "unlawfully obtained and disseminated." *Id.* at ¶ 37. According to Billups, there was "no Court Order or Grand Jury subpoena" authorizing Ocwen to obtain her credit report. *Id.* at ¶ 69. Because of these actions, Billups "was unable to acquire credit necessary to purchase a property and other requests for credit" were denied "as a result of a hard pull" that "reduced her credit score" and caused "denials of numerous requests for credit." *Id.* at ¶ 70.

Against this backdrop, Billups alleges that Ocwen: violated the FCRA, 15 U.S.C. § 1681 *et. seq.* (Counts I and II); violated the FDCPA, 15 U.S.C. § 1692 *et. seq.* (Counts III and IV); and committed the common law tort of inclusion upon seclusion (Counts V and VI). Ocwen now moves to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

As a *pro se* litigant, we construe Billups' pleadings liberally, but this does not mean that Billups does not have to follow the rules of civil procedure. *See Egwuenu v. Charles Schwab & Co.*, 834 F. App'x 245, 246 (7th Cir. 2021); *see also Trinh v. Weltman, Weinberg & Reis Co., L.P.A.*, 2012 WL 5824799, at *2 (N.D. Ind. 2012) (discussing

---

[2] *See also Billups v. Deutsche Bank National Tr., et al.*, No. 1:19-cv-03570 (N.D. Ill.) (Feinerman, J.) (dismissed without prejudice for failure to pay a filing fee); *Billups, et al. v. Deutsche Bank Nat'l Tr. Co., as Tr. for Popular ABS, Inc., Series 2007-A, et al.*, No. 1:19-cv-05891 (N.D. Ill.) (Ellis, J.) (stayed pending a related state appeal).

this standard in a similar FCRA case). In resolving this Motion specifically, the Court assumes the truth of the operative complaint's well-pleaded factual allegations, but not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The Court also considers "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts in Billup's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (cleaned up). The facts are set forth as favorably to Billups as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In discussing the facts at the pleading stage, the court does not vouch for their accuracy, but still construes them in the light most favorable to Billups. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

## DISCUSSION

Against this broad legal backdrop, the Court now assesses and rules on the FCRA, FDCPA, and common law claims in turn.

### 1. Fair Credit Reporting Act Claim

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see also* 15 U.S.C. § 1681(b). To achieve this goal, the FCRA imposes civil liability on a person that willfully or negligently obtains a credit report for an unauthorized purpose. A plaintiff may recover actual damages for

negligent violations, 15 U.S.C. § 1681 o(a)(1), and actual or statutory and punitive damages for willful ones, *id.* § 1681n(a)(1)-(2); *Safeco*, 551 U.S. at 53.

Merely accessing a credit report without consent does not alone cause an entity to incur FCRA liability. *See Stergiopoulos v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1046 (7th Cir.2005). Rather, it is the "*purpose* behind the inquiry that is determinative." *Perez v. Portfolio Recovery Assocs., LLC*, 2012 WL 5373448, at *2 (D.P.R. 2012) (emphasis in the original). The Act provides that a "person shall not use or obtain a consumer report for any purpose unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section." *See* 15 U.S.C. § 1681b(f)(1). "So the purpose is key." *Rogers v. Wells Fargo Bank, N.A.*, 2020 WL 1081721, at *3 (N.D. Ill. 2020) (Seeger, J.). "Section 1681b(a) authorizes credit agencies to furnish credit reports for certain specifically enumerated purposes – and *only* those purposes." *Id.* (emphasis added). "To state a claim under section 1681b, a complaint must allege that (1) there was a consumer report; (2) the defendant used or obtained it; and (3) the defendant did so without a permissible statutory purpose." *Id.* at *4.

The Complaint plainly alleges the first two elements and the real heart of this case is about whether Ocwen had a "permissible purpose" to access Billups' credit report, which would be a "complete defense" to this claim. *Betz v. Jefferson Cap. Sys., LLC*, 68 F. Supp. 3d 130, 133 (D.D.C. 2014). Preparation for litigation can be a "permissible purpose." *Allen v. Kirkland & Ellis*, 1992 WL 206285, at *2 (N.D. Ill. 1992)

("Preparation for litigation regarding a business debt qualifies as a permissible purpose under the broad language of § 1681b(3)(E)."); *accord Minter v. AAA Cook Cty. Consolidation, Inc.*, 2004 WL 1630781, at *4 (N.D. Ill. 2004). Collecting a debt can also be a permissible purpose. *Stewart v. Credit Control*, LLC, 2020 WL 2307441, at *2 (N.D. Ill. 2020) (collecting cases and citing *Miller v. Wolpoff & Abramson, LLP*, 309 Fed. App'x 40, 43 (7th Cir. 2009) (nonprecedential disposition)). So too can collecting a mortgage debt be a permissible purpose. *Pignato v. PHH Mortg. Corp.*, 2020 WL 7382307, at *16 (N.D. Ga. 2020) ("As Plaintiff's loan servicer, it was permissible for Defendant to obtain Plaintiff's credit report to use that information in connection with the collection or review of his mortgage, pursuant to 15 U.S.C. § 1681b(a)(3)(a)."); *Best v. Bank of Am.*, 2015 WL 5124463, at *7 (E.D.N.Y. 2015) (similar). In line with these permissible purposes, Ocwen tries to depict what happened to Billups as permissible. But, at least in this context, this is a fact question better decided in a different procedural posture—certainly not on a motion to dismiss where we must construe the facts liberally in Billups' favor.

Undeniably, Ocwen is correct that Billups must still "aver sufficient *facts* to establish to a plausible degree that Defendant obtained the credit reports for an impermissible purpose, and that their conduct was either willful or negligent." *Perez*, 2012 WL 5373448, at *2 (emphasis added); *accord Robinson v. Cap. One Bank (USA), N.A.*, 2020 WL 5819664, at *10 n.6 (D. Kan. Sept. 30, 2020) (collecting cases). Ocwen is also correct that Billups' Complaint is largely bereft of rich, textured factual

narratives. But Billups is not required to make her pleadings artful to get through the courthouse doors—especially because she is a *pro se* litigant. At bottom, deciding the "permissible purpose" question is dangerously close to a factual finding, which the Court cannot make on a motion to dismiss.

The key *fact* that gets Billups past Ocwen's Motion is the alleged mortgage debt was discharged in bankruptcy in 2011, which Billups alleges is the "core case." Compl., ECF No. 61 at ¶ 1; ¶ 35 (alleging that Ocwen obtained her credit report on a debt that "was discharged through bankruptcy in September 2011."). Billups' response brief is even more forceful on this point. *See* ECF No. 69 at 5-6; 8 ("there could not have been attempt to enforce a mortgage through ongoing mortgage litigation as Defendants would lead this court to believe [,] because the Mortgage was discharged through Chapter 7 bankruptcy. . .". Recognizing the potential vulnerability here, Ocwen itself even preempts this argument in its original Motion.

"The gist of [Ocwen's] argument is that the existence of a mortgage lien is dispositive, and requires dismissal of any claim." *Rogers*, 2020 WL 1081721, at *7. But there is "no such per se rule." *Id*; *see also Germain v. Bank of Am., N.A.*, 2014 WL 5802018, at *6 (W.D. Wis. 2014). At this point, the only question is whether Ocwen is "entitled to prevail as a matter of law – again, at the motion to dismiss stage – based on its own assertion that it acted with a legitimate purpose." *Id.* at *6. It cannot.

Neither Ocwen nor Billups cite *Rogers*—one of the few Northern District cases at the intersection between bankruptcy and FCRA cases like this one. Ocwen instead relies

on an out-of-circuit case that is not squarely on-point here.[3] Specifically, in *Vanamann v. Nationstar Mortgage*, the Ninth Circuit upheld the district court's grant of summary judgment—not a motion to dismiss—because the FCRA does not prohibit a mortgage servicer from obtaining a credit report after a discharge of the mortgage debt. 735 Fed. App'x. 260, 262 (9th Cir. 2018). Notably, *Vanamann* interprets a "willful" violation, meaning one "known to violate" the FCRA or that is reckless about a statutory duty. *Id.* (citing *Safeco*, 551 U.S. at 56–57). Recklessness in this context means in part that the defendant's interpretation of the FCRA was "objectively unreasonable." *Id.* And, when applying the objectively unreasonable standard, the *Vanamann* court concluded that "the plain text of the [FCRA] does not prohibit a mortgage servicer from obtaining a consumer's credit report after a bankruptcy court's discharge of the consumer's mortgage debt." *Id.* In effect, Ocwen asks the Court to import an out-of-circuit rule about a different provision of the act on summary judgment—not on a motion to dismiss.[4] The Court will not do so.

In sum, the Court at this early stage must take the allegations in the Complaint as true. This means that all reasonable inferences favor Billups—not Ocwen. And without

---

[3] Admittedly, Ocwen cites *Radney v. Bayview Loan Servicing, LLC*, a 2016 case on this point where Judge Darrah noted that "neither party cites to any controlling case law to support their arguments as to whether Nationstar had a permissible purpose to pull Plaintiff's credit report under the FCRA." 2016 WL 3551677, at *4 (N.D. Ill. 2016). But, as this Opinion's discussion makes clear, the legal contours have changed since 2016. For example, Judge Seeger's decision in *Rogers* breathes new life into this area.

[4] Ocwen also finds support in other out-of-circuit cases, which are persuasive, but in conflict with *Rogers*. *See, e.g., Raciti v. Rushmore Loan Mgmt. Services, LLC*, 412 F. Supp. 3d 462, 470 (D.N.J. 2019); *Marino v. PNC Bank*, 2018 WL 5114136, *2 (D. Nev. 2018).

knowing why Ocwen obtained the credit reports, the Court cannot declare as a matter of law that it was for a legitimate reason. Especially at the motion to dismiss stage, it is not time for Ocwen to tell its side of the story, let alone receive a judgment in its favor based on that narrative. That is simply too much. So the Court denies Ocwen's motion.[5]

Ocwen next argues that Billups' Complaint does not plead a "hard pull" of Billups' credit, which could establish actual damages under the FCRA. *See Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) ("Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages[.]'"). But the plain text of the Complaint facially alleges a damaging "hard pull." Compl., at ¶ 70 (alleging that Billups "was unable to acquire credit necessary to purchase a property and other requests for credit" were denied "as a result of a hard pull" that "reduced her credit score" and caused "denials of numerous requests for credit.").

True, Ocwen could still prevail if the Complaint's exhibits squarely contradict Billups' written allegations. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (noting that the Court can consider exhibits as part of the Complaint). For example, one of Billups' exhibits, reads "[t]hese inquiries DO NOT affect your credit score and are

---

[5] Admittedly, based on the documents presently before the Court, Billups has an uphill battle to wage in making out a viable claim, but a motion to dismiss is not the proper vehicle for such a declaration. *See Thomas v. Fin. Recovery Servs.*, 2013 WL 387968, at \*4 (C.D. 2013) (observing that courts are "especially skeptical of claims brought against debt collection agencies, given that debt collection agencies typically request credit reports for the permissible purpose of seeking the information in connection with the consumer's debt.").

not seen by anyone but you. . ." ECF No. 61, p. 48; ECF No. 24, p. 55. But Billups'
Complaint alleges several credit pulls, not just the one in this exhibit. Not to mention
that the current record does not supply an entirely fulsome picture of what has happened
here. Thus, the Court will not dismiss Billups' claim and will reserve judgment on these
points for a later day.[6]

## 2. FDCPA (Count III and IV)

In Count III, Billups' alleges an FDCPA violation without anything the Court
can construe as a factual allegation—even when the Complaint enjoys a hearty
presumption of truth at this stage. Thus, Ocwen is in no way on notice of what it did
wrong and cannot fairly present a defense. So Count III is dismissed.

But what about Count III's clone Count IV? Specifically, Count IV alleges the
same thing as Count III but adds the following: Ocwen made "false and misleading
representations in connection with attempting to collect a debt and by claiming to
represent Ocwen in a foreclosure action when they were not a party to that and other
misleading statements." In evaluating this language, the Court ignores legal
conclusions, so words like "false" or "misleading" do not receive any weight. The only
remaining factual allegation is that Ocwen somehow attempted to collect a debt and
that the Locke Lord attorneys somehow illegally claimed to represent Ocwen. This too

---

[6] Similar reasoning exists for emotional distress damages and damages for a willful violation of the FCRA.
For the reason already discussed, the Court defers ruling on these questions.

is vague, nebulous, and so conclusory such that Ocwen—or the Court—cannot appreciate how the claim is supposed to function or why Billups thinks Ocwen is liable.

In reaching that conclusion, the Court is mindful to construe Billups' claim liberally by, among other things, looking at the attached exhibits. One pertinent exhibit here is a letter sent to Billups from Locke Lord, that Billups alleges was a prohibited communication in connection with a debt. "Generally speaking, a communication from a debt collector to a debtor is not covered by the FDCPA unless it is made 'in connection with the collection of any debt.'" *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 382 (7th Cir. 2010). While there is no bright line rule for determining if a communication is made in connection to a collection of debt, courts will look at relevant factors such as, "the absence of a demand for payment," "the nature of the parties' relationship," and "the purpose and context of the communications." *Weber v. Seterus, Inc.*, 2018 WL 1519163, at *11 (N.D. Ill. 2018). Here, the letter sent by Locke Lord was in no way to collect a debt because it does not make any reference to payment, nor does it address the substantive issues relating to the mortgage. Therefore, Billups FDCPA claim about this letter fails.

In response, Billups alleges Ocwen engaged in harassing and deceptive conduct in violation of 1692(d) or 1692(e)(10) of the FDCPA. A Section 1692(d) violation occurs when "a debt collector engages in any conduct the natural consequence of which is to harass, oppress or abuse any person in connection with a collection of a debt." 15 U.S.C. § 1692(d). Relatedly, a violation of Section 1692(e)(10) occurs when "the use

of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692(e)(10). Here, Billups has failed to allege facts that support this claim. The Locke Lord letter was not deceptive or harassing as it merely stated Locke Lord represented Ocwen regarding Billups' mortgage loan.

Billups' does not rebut these arguments in her Response, but instead argues that Ocwen violated the FDCPA because the letter sent by Locke Lord to Billups' attorney was a communication in connection with a collection of debt, and that the "soft pull" of her credit report was deceptive. However, Billups is barred from making these claims because the FDCPA has a one-year statute of limitations. 15 U.S.C. § 1692k(d). Additionally, even if these allegations were not barred by the statute of limitations, Billups still did not allege sufficient facts to show the actions taken by Ocwen were deceptive.

For these reasons, Counts III and IV are dismissed with prejudice. *See Lee v. Northeast Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053 (7th Cir. 2019) (affirming district court's denial of leave to amend complaint where plaintiffs had multiple opportunities to fix the deficiencies in their pleadings). Ordinarily, courts give *pro se* plaintiffs leave to amend, but Billups has already had that opportunity. Not to mention that this is one of *four* cases Billups has filed in the Northern District, which should supply her with a sufficient avenue for redress. Indeed, in one of the currently pending cases before Judge Ellis, Billups is actively pressing allegations about Ocwen's

conduct after her bankruptcy discharge. Billups has also litigated with these and other defendants regarding her home mortgage loan in the state-court foreclosure and her bankruptcy case.[7]

### 3. Common Law Tort Claims (Count V and VI)

The final bit we must disentangle is Billups' allegation that Ocwen committed the common-law tort of intrusion upon seclusion. *See* ECF No. 61, ¶¶ 98-99, 101-102. But the FCRA expressly preempts state law negligence and invasion of privacy claims. 15 U.S.C. § 1681h(e); *see also Johnson v. Trans Union, LLC*, 2012 WL 983793, at *9 (N.D. Ill. 2012), *aff'd*, 524 F. App'x 268 (7th Cir. 2013). And the harm attending an FCRA violation is "closely related to—if not the same as—a harm that has traditionally been regarded as providing a basis for a lawsuit: intrusion upon seclusion. . ." *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir. 2019). This means that the FCRA preempts Billups's claim. *See Freeman v. Ally Fin. Inc.*, 2021 WL 1099840, at *7 (D. Minn. 2021). Thus, the Court dismisses Counts V and VI with prejudice because any extra amendment would be in vain.

## CONCLUSION

For these reasons, the Court grants-in-part and denies in part Ocwen's motion to dismiss. Telephonic status is set for 5/11/2021 at 10:40 a.m. It is so ordered.

---

[7] To the extent the Court cannot make the inferential leaps required to resuscitate Billups' FDCPA claim, the Court finds that Billups' briefing on this point is perfunctory. Thus, Billups waives many, if not all, of these issues.

Dated: 4/27/2021

Charles P. Kocoras
United States District Judge